[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15886
Non-Argument Calendar

_____

BIA Nos. A95-899-550 & A95-899-551

LEON ALLEN RAMIREZ-OSPINA,
EUNICE DE JESUS SOTO-FORONDA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 22, 2006)**

Before ANDERSON, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Leon Allen Ramirez-Ospina and his wife, Eunice De Jesus Soto-Foronda,

natives and citizens of Colombia, petition for review a decision of the BIA that affirmed the denial of their application for withholding of removal and relief under the Convention Against Torture. Ramirez-Ospina argues that he is entitled to withholding of removal or relief under CAT because he suffered past persecution at the hands of the FARC based upon Ramirez-Ospina's activities with the Liberal Party. Ramirez-Ospina's wife relies upon his application. We affirm.

## I. BACKGROUND

Ramirez-Ospina and his brother, Arquimedes Ramirez, are members of the Liberal Party and owned farms in Balboa, Colombia. Ramirez-Ospina alleges that, on November 28, 1998, he and his brother received a threat that they would be killed for their involvement with the Liberal Party unless they left their farm. Because he did not leave his farm, Ramirez-Ospina received two more threats in early 1999.

According to his asylum application, Ramirez-Ospina and his wife entrusted their farm to Victor Martinez and his son, Armando, and moved to an apartment in Bogota. Ramirez-Ospina's brother remained in Balboa, and was killed presumably by the FARC on January 17, 1999. The caretakers of their farm were allegedly killed by the FARC on November 22, 2001.

At his asylum interview, Ramirez-Ospina alleged that, on January 18, 1999, he was the target of a shooting by the FARC. Ramirez-Ospina originally told the

2

asylum officer that he was attacked on the way to the U.S. Embassy to get a visa. When the asylum officer mentioned that Ramirez-Ospina's visa was issued on March 12, 1999, Ramirez-Ospina changed his testimony and stated that he had gone to get his Colombian passport.

At the removal hearing, Ramirez-Ospina conceded removability, but argued that he and his wife were entitled to withholding of removal and relief under CAT. To support his allegations, Ramirez-Ospina submitted documentary evidence that included death certificates for Victor and Armando Martinez, which stated that they had been killed on November 3, 2001, a newspaper article about the Martinez' deaths dated November 5, 2001, and a death certificate for Ramirez-Ospina's brother, which stated that his brother died on January 17, 1999.

Ramirez-Ospina testified about the shooting incident. Ramirez-Ospina testified that he was walking to the store on January 19, 1999, when two individuals with automatic weapons shot at him. The shots missed him because Ramirez-Ospina ducked behind two vehicles. Ramirez-Ospina then returned home and did not file a police report. Ramirez-Ospina testified that he thought the individuals who shot at him were members of the FARC.

The IJ made an adverse credibility finding and denied Ramirez-Ospina's application for withholding of removal and relief under CAT. The IJ stated that Ramirez-Ospina's application failed to provide the date and suspected perpetrators

of the shooting and conflicted with the facts surrounding the attack in his testimony. The IJ also stated that the dates Ramirez-Ospina provided for the deaths of the caretakers was inconsistent with the death certificates and newspaper article.

The IJ denied Ramirez-Ospina's application for withholding of removal because Ramirez-Ospina failed to provide corroborative evidence about the shooting, his involvement in politics, and the connection of the alleged murders to the FARC. The IJ denied relief under CAT because Ramirez-Ospina failed to present any evidence to prove that it is more likely than not that they will be tortured upon their return to Colombia.

The BIA affirmed and adopted the decision of the IJ. The BIA explained that, even if Ramirez-Ospina were credible, he failed to establish that the mistreatment he suffered rose to the level of persecution. The BIA also concluded that Ramirez-Ospina failed to establish a clear probability of future persecution or torture in Colombia.

## II. STANDARD OF REVIEW

Because the BIA issued a separate opinion from the IJ, we review the decision of the BIA, except to the extent that the BIA expressly adopts the decision of the IJ. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the scope of constitutional rights de novo. Lonyem v. U.S. Att'y Gen., 352 F.3d

4

1338, 1341 (11th Cir. 2003). We review an adverse credibility finding for substantial evidence. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). We reverse the decision of the IJ only where the record compels a contrary conclusion. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005).

### III. DISCUSSION

Ramirez-Ospina presents four arguments: (1) the BIA violated his right to due process, (2) the adverse credibility finding by the IJ is not supported by substantial evidence, (3) the denial of his application for withholding of removal is not supported by substantial evidence, and (4) the denial of relief under CAT is not supported by substantial evidence. Each argument fails.

*A. The BIA Did Not Deny Ramirez-Ospina Due Process.*

The argument that the BIA violated Ramirez-Ospina's right of due process by summarily affirming the decision of the IJ fails. Although aliens are entitled to due process, see Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1311 (11th Cir. 2001), we have held that summary affirmances by the BIA, which are allowed by the regulations, see 8 C.F.R. § 1003.1(e)(4), do not violate due process. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1289 (11th Cir. 2003). Moreover, the BIA did not enter a summary affirmance; the BIA provided Ramirez-Ospina a cogent and reasonable explanation in a written decision.

5

*B. The Adverse Credibility Finding Is Supported by Substantial Evidence.*

The adverse credibility finding by the IJ is supported by substantial evidence. The alien has the burden to show that a credibility finding is "not supported by 'specific, cogent reasons' or was not based on substantial evidence." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (quoting D-Muhumed, 388 F.3d at 819). Material inconsistencies between Ramirez-Ospina's asylum application, asylum interview, and testimony support the adverse credibility of the IJ. Ramirez-Ospina's testimony about the shooting incident conflicted with his asylum interview and his application. The dates provided by Ramirez-Ospina of the caretakers' deaths were also inconsistent with the documentary evidence.

*C. Ramirez-Ospina Is Not Entitled to Withholding of Removal.*

Ramirez-Ospina argues that the BIA erred when it concluded that Ramirez-Ospina failed to establish past persecution. An alien is entitled to withholding of removal if it is "more likely than not that [he] will be persecuted or tortured upon being returned to [his] country." Sepulveda, 401 F.3d at 1232. If an alien establishes past persecution, a rebuttable presumption arises "that his life or freedom would be threatened upon return to his country . . . ." Mendoza, 327 F.3d at 1287.

Substantial evidence supports the denial of Ramirez-Ospina's application for

6

withholding of removal. The IJ determined that Ramirez-Ospina's testimony was not credible, and Ramirez-Ospina failed to establish that the shooting incident, even if true, was based upon his political opinion. See Silva v. U.S. Att'y Gen., ___ F.3d ___, No. 04-10351, at *13 (11th Cir. May 5, 2006). The record also does not compel the conclusion that Ramirez-Ospina's shooters were members of FARC. See Sepulveda, 401 F.3d at 1229 (denying the petition where the applicant "believed" a bomb was related to her political activities).

*D. Ramirez-Ospina Is Not Entitled to Relief Under CAT.*

Ramirez-Ospina is also not entitled to relief under CAT. Under CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Torture is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . at the instigation of or with the consent or acquiescence of a public official." Id. § 208.18(a)(1). Ramirez-Ospina provided no evidence that he would be tortured upon his return to Colombia.

## IV. CONCLUSION

Ramirez-Ospina's petition for review of the order of the BIA is

**DENIED.**

7